21-1759, Fraternal Order of Police, Metropolitan Police Department, Labor Committee, DC Police Union, Appellant, vs. District of Columbia, and Muriel Bowser, in her official capacity as Mayor of the District of Columbia. Mr. Conte for the Appellant, Ms. Johnson for the Appellant. Good morning, counsel. Good morning. You may proceed. Thank you, and may it please the court, Anthony Conte on behalf of the DC Police Union. The DC Police Union represents the rank and file members of the Metropolitan Police Department, and they became a politically disfavored and in fact demonized group in the spring and summer of 2020. And it wasn't because of anything that occurred in the District of Columbia. It wasn't because of anything that any DC Police Union member did. The DC Council recites as its as its impetus for the act that's being challenged and the portion of the act, something that occurred 1000 miles away in Minnesota. The DC Council recites that there were peaceful protests, and that was another impetus. But there were also in the context of when this statute was passed, many not so peaceful protests. This was a time when there were daily occurrences of riots in the streets. shopkeepers were boarding up buildings in the district, fires were being set, officers ring attack, police stations were being attacked, and citizens as well. And not just in the District of Columbia, but many of the metropolitan areas throughout the country. This went on for months. And when it reached a fever pitch, the DC Council decided it needed to act on an emergency basis to quell what was occurring in its jurisdiction. It's important to note that we're not challenging every aspect of this act. We're challenging a very particular aspect that we view as punitive. The impetus of this act was because of a police brutality incident that occurred in Minnesota. And most of the provisions in the act relate to revisions to issues surrounding police brutality. There were changes to the use of force review board and its practices. The body camera legislation was included that allowed for the release of body camera footage in these use of force incidents. And none of that is being challenged. What we're challenging is just to be clear. And so what you're saying is the legislation as a whole was not out to punish the police. It is just this one provision. One provision that's driven by the animus that I mean, you could view all of the legislation as punitive, but that's not our challenge because what you said, you're not challenging. You're not. That's correct. You're not challenging it or you don't think that it was. We're not challenging it. And I think it. So we're taking it as a given for this case that all the rest of the statute is not motivated by an impermissible animus. But you're focused on this, which you've described, differential treatment with respect to collective bargaining on discipline measures. Yes, because the test that the courts required to apply looks to the reasonableness and the justification for it. And if it's believed that the basis for it was use of force abuses, then the reasonable justification is the regulating use of force. I'm sorry, what what claim are we talking about? Because I don't see the relevance of any of this for your equal protection process claims on rational basis review. Agreed. And that's what I was getting to, Your Honor. I think it's the bill of attainder claim when we get to the punitive nature is what is really the focus and what draws in the enhanced scrutiny beyond what the court would normally apply, whether it's equal protection or due process. And in the bill of attainder analysis, the court looks to whether or not two components are met specificity and punitive. And specificity is conceded and it was accepted by the lower court. But I think that that is an important point that the court shouldn't gloss over when when a statute is deemed to specifically target a group like the D.C. Police Union, the courts have held that that raises suspicion because it's singling out people. And under a bill of attainder analysis, that triggers that higher level of scrutiny. It's more exacting than rational basis because it demands that the purposes for the statute are not merely reasonable or rational, but non-punitive. The non-punitive purpose. I think if I ask, I'm sorry, I just need to clarify something, though, to make sure I'm understanding this law. So the provision about no collective bargaining for disciplinary procedures is is limited to MPD officers. Correct. Right. That's your point. And not to other other forms of police officers in this in the city, other the housing authority police, the the Department of Corrections police. Is that correct? That's correct. That's correct. But other parts of this legislation, like the chokehold, say that they apply to law enforcement and special police officers. So do. Like the neck restraint and everything, does that apply to Department of Housing Authority officers and corrections officers? So it's just this provision about collective bargaining that's confined to metropolitan police officers? Yes, I believe so, Your Honor. I just don't know all the terminology. So are these housing authority police officers that you mentioned in your brief, are they considered law enforcement or are they special police officers? I just don't know what they mean. Statute means by special police officers. I believe special police officers are essentially the the security police officers that police the different buildings within the District of Columbia. OK, so Department of Housing Police, are they are they normally encompassed with the phrase within the phrase law enforcement? I believe so, Your Honor. OK. All right. I just I wasn't there on all this terminology. Certainly. And also, to be clear, when the D.C. Police Union is identified, which they are in the statute, that's not even all Metropolitan Police Department officers. The D.C. Police Union is rank and file. So it's 3,500 or so officers, sergeants and So in 16C1, it says all matters pertaining to the discipline of sworn law enforcement personnel shall be retained by management and not be negotiable. And then in C2 makes clear that that provision will apply to collective bargain agreements with Metropolitan Police. And so what I'm trying to understand is C1, does law enforcement personnel just mean personnel shall be retained by management applied to all law enforcement in the district, which would include I thought you just said the housing, at least the housing authority police. And then two was just making clear that we're including in this collective bargaining agreements. And that's why I'm having trouble with the terminology in the statute, because it ties into your argument about targeting police, at least for your equal protection plan. Sure. And to be clear, the only police union or police officers that have been affected by the provision that excludes bargaining over discipline is the D.C. Police Union. It's not any of the other housing authority police or special police. With respect to I think- Do they have their own unions and they're not affected? Yes, they have their own unions. Yes. And they have their own collective bargaining agreements. And they remain unaffected by the legislation. When C1 talks about law enforcement personnel, at least there, that phrase law enforcement personnel seems to refer only to MPD and not all law enforcement personnel in D.C., under D.C. jurisdiction. Right. And I apologize, Your Honor, I haven't focused particularly on that, but I believe that was already in existence. That statement is a general statement of a management right. And that applies probably, frankly, to all unions and all district employees, that management retains certain generic rights related to discipline. Can I take- Can I take you back to this question of punishment and animus? I mean, you're trying to reduce the bill of attainder question to, you know, the extent to which this act was or wasn't motivated by concerns about the police and whether those concerns are justified, whether D.C. is overreacting. And I just don't really see why that's the case. The ultimate question is whether this act imposes punishment. And you can look to history and you can look to function. And what this act is all about is the scope of collective bargaining. And that seems very far removed from the heartland of punishment, which is a criminal sanction for something. So even if- even if you think that the D.C. council was wildly overreacting to one incident in a very different jurisdiction, I don't see how that comes close to supporting a conclusion that what they did was akin to punishment. And your honor, I think the- as you stated it, if they just touched on collective bargaining, collective bargaining rights, I might agree with you, but it wasn't collective bargaining rights. It's to eliminate collective bargaining over discipline. And so when you narrow your focus and sharpen your pencil to attack solely discipline, what you're communicating is that your belief is that there's something wrong that's preventing discipline. Even the district's articulation of the basis, which is the word accountability, not anything beyond more than that. Accountability taken specifically in the context of solely removing disciplinary bargaining rights. I mean, it's discipline in the administrative context, right? Meaning how they go about administering discipline? Yeah, meaning something other than criminal process, right? Correct. If you had one of these disciplinary proceedings and you raise an argument that this is effectively punishment and therefore criminal process attaches, you would lose that argument because it's not. It's nothing like criminal punishment that we're talking about. Yeah, I agree. But I still think nonetheless, if the court looks at prior decisional law, yes, from the historical context, criminal punishment may have been the traditional bill of attainder analysis. But what the case law tells us is that the bill of attainder clause is not meant to be strictly interpreted from a historical context. I think if the court looks at, I would say there are two overarching themes that you can take from the bill of attainder cases. First is the component of reputational stain. This is an act that was passed and the council members that passed the act stated explicitly that the DC Police Union was a racist organization that engaged in brutality and that that was the impetus for this act. From the standpoint of bill of attainder analysis, the court has to look at that reputational stain because that's precisely how they've taken an identified group and labeled them. And if the court looks at some of the cases and some of the decisions more recently in assessing whether or not this is a bill of attainder punishment versus a reasonable and responsible reaction of the court, it should be guided by whether or not the actor, the DC Police Union, was specifically targeted for their actions. Did that trigger this legitimate legislative action? So, for example, Bell South. Well, Bell South was engaged in monopolistic behavior and so the court upheld regulations that related to this anti-competitive behavior. Nixon. Nixon was specifically involved and attracted the attention of the legislature through his actions relating to his documents and his records. Kapersky. Kapersky was singled out specifically for the fact that it had close ties to Russia. It presented the legislature with a concern over security and they removed the concern. Here, if we take from those cases that lens and that viewpoint, what the DC council has had no bearing. They reached a conclusion. They stained the individuals and they targeted specifically discipline. Can I ask a question about the purposes of your contract impairment contract clause claim? So, the collective bargaining agreement article 12 talks about setting up a committee to establish procedures and they were supposed to do it within six months or agree to an extension and by the time this law was passed, we are way past that time period and so I was confused as to what happened with that committee and its whole process for setting up procedures or was there essentially a determination just to go with the procedures that are outlined in the collective bargaining agreement? I'm just trying to see what was interfered with here. It's a very good question and it's one thing that I did want to touch on. The six month is not a time limit to start the process. That's a time limit from when the committee has been formed and so it's a little bit misleading when you look at six months and you say well we're well on six months. The fact of the matter is the committee was never formed and the reason the committee was never formed, which I think is very telling, is that clearly the parties both believed that the status quo for the time being was acceptable. Now, what the district argues is well the legislature spoke and it's no longer acceptable so they've terminated that clause. Well, that's a termination of an existing contractual right and it's not one that's in perpetuity, which is the other fallback argument of the district, because that right can be exercised and triggered by either side and once that process starts the committee has to be formed and once the committee forms there's the the six month time period and the mediation process and What record evidence is there as to the parties believe that the status quo was satisfactory for the time being? There's none, your honor, but to the extent that either the backdrop of it was they couldn't reach an agreement and so they agreed to form a committee. Yes, excuse me, go ahead. And so the backdrop was when they were engaged in bargaining the predecessor contract that is still in existence today through the automatic renewals, they reached an agreement that this was something that they would form a committee on and continue to bargain and neither party has began to formulate that committee. Neither party has initiated that process. You could say there's no evidence that they're pleased with the status quo, but one would assume that if either side thought that this needed to be changed, that there was such a problem in the District of Columbia with respect to this accountability issue and that they needed to change and reformulate how discipline was going to occur that one of the parties would have reached out and began that process and they didn't. Well, that's speculation, isn't it? Well, it's not speculation that neither side. I mean, for all kinds of different reasons and you're more in touch with this than I am, but these types of things happen all the time. Committees are set up or authorized, you know, for one reason or another, they never get started. Agreed, your honor. I don't think that's helping your arguments here. That's all I'm trying to get not that you could not make a case, but rather that it's following up on Judge Katz's point. I think it helps our argument because in the district's briefs, their position is, while this right may have existed, once the legislature spoke, it terminated that right, and that's the essential issue in a contract clause challenge. Right, that's a different issue though and I just want to be clear about that. That's all. You made a representation and there's no evidence of that. Now, the legal argument the district makes is different in terms of it may be deficient for other reasons. That's my only, what I just want to clarify. Understood, your honor. I have something else I'd like to clarify though. And so, under your understanding of what sort of transpired on the ground, what this intervening legislation took away was not in a process, but was in fact, it just interfered. You had an existing arrangements that, I guess it seemed like status quo, both parties had settled on with procedures for dealing with discipline. And then, this new process by saying it will be unilaterally, whatever management chooses, consistent with D.C. law and the constitution. And so, it's the change in procedures, in the discipline procedures, that's been interfered because there was no exercise right to form a committee and negotiate discipline procedures. You had the procedures in the collective bargain agreement and that's what's been disrupted. I think both were disrupted. We have article 12 and it contains numerous provisions that relate to discipline and disciplinary procedures. That was terminated, but in addition, you could think of it as a one-time option. An option to start a committee process to renegotiate provisions that would then be in the next agreement. That's nowhere in the text of this provision. It doesn't sound like here are the procedures and if either party wants to change things, here's a process they can trigger. They've agreed to form, they shall do these things and you're saying it just never happened. So, it sounds like both parties just sort of forwent that opportunity. It's not like some springing opportunity you can bring up at a later point. It's not written that way. Well, it's written to say that unless and until they do, that the article 12 will be included in each successor collective bargaining agreement. There's all kinds of time limits and then going to mediation. If the committee process doesn't break down, it seems rather different. I mean, I take it, I take your word that you're describing sort of the on-the-ground reality between the parties, but it's just, it seems. So, with all due respect, I mean, that's what I'm trying to get at. I don't think that he has said there's no record evidence to support his position. All right. And I think that's important to be clear what we're dealing with here. He's talking about serious challenges here and we need to be clear what he has presented to support that. And I thought that's what Judge Katsas was exploring in his questions. I would just point the court to section two, which says the current article 12 has set forth in the existing collective bargaining agreement shall remain in full force and effect during the committee's deliberations and shall be incorporated into any successive collective bargaining agreement until committee reaches an agreement on changes. Right. It's in full force and effect during their deliberations, but there's no during deliberations period. There's been no committee, so there's no deliberations. Correct. But these collective bargaining agreements span three years. So, to read this so narrowly to say it had to be exercised immediately, had to be completed within six months would give no meaning to that. It was contemplated that status quo would remain until one exercises the right through this committee process. And while no one has exercised that right, there's nothing in here that says that that right terminates. So, at the time of this legislation, at least the police, the Fraternal Order of Police had not invoked that right to process. Correct. Correct. I'm over my time, but I'm more than happy to answer any questions. Well, let us hear from the government. We'll come back to you on rebuttal. Thank you. Good morning. May it please the Court. Holly Johnson for the District of Columbia. Any ambiguity in this carryover clause in Section 2 of Article 12, any ambiguity means that this Court should interpret the contract in favor of the government, because what FOP is trying to do with this contract is preclude the legislature from decision. Anytime the contract clause threatens a new law, if there's a way to get out of that contract analysis by looking for ambiguity in the contract, that's what the courts should do, because they don't want contracts to threaten legislative freedom of action. Now, interestingly, FOP's counsel has just introduced a new ambiguity into this provision that I was unaware of, that the committee never even formed and never even began its deliberations, but this does tie into one of the ambiguities I raised in my brief, which is that there's a lot that is not known about this process, and whether it's not completed, but not extended, and whether the parties jointly agreed to extend it. So I do think that that's why it's not known by the district. I mean, you're one of the parties. I should clarify. My understanding of what happened, which is not in the record, is different from what Mr. Conte just presented, but since we're basing this on the complaint, I just think that I hadn't even considered that as another kind of ambiguity that this court could rule upon. But I'd like to point out another ambiguity that I think is even cleaner and is a clear way for this court to dispose of the contract clause claim, and that is the fact that this carryover clause, which is the only clause that FOP is arguing was effective at the time that the law went into effect, is itself terminable under the renewal clause under Article 48, Section 4 of the Collective Bargaining Agreement. And FOP doesn't talk about this in their reply brief, even though it's a main point of our brief. This renewal clause says that any party within 150 days of the expiration of the contract, any party, can disavow, can terminate, or state intent to modify any part or any clause in the Collective Bargaining Agreement. And if they do that, only the related articles or parts of articles shall be affected, and the unrelated articles or parts of the articles shall continue. I need your help on this 150-day counting thing, because it seems to complicated. It is a little complicated. It's a lot complicated, because if I've got this right, each of these bills, you know, you've had a whole series of, until mid-2021, you had a whole series of 90-day bills, one after the other, none of which could provide a 150-days notice, because they were all only 90 days long. And so you don't get a bill enforcing this provision longer than 150 days until, sorry, it's May 2021. I'm taking a moment. May 2021 is not 150 days before October 2021, when I assume this contract renewed again. So you have, I don't, I don't understand your notice. You're going to have to explain to me, because I don't think a 90-day statute can give 150 days notice. So I'm going to respond to that. I hope the Court will bear with me for a moment, because this is not an argument that FOP raised at any point in this litigation. You've made it, and it's just a question of math. So I'm just, yes, I hope you... No, no, no, I understand that. My understanding of temporary and emergency legislation is that as long as they do not lapse, they continue in full force, and that Section 116 should have provided ample written notice. But if this how someone has noticed, when do they get notice? They don't have notice when the thing is enacted on day 90, on the first day. Correct. And so you're saying just to add up different statutes? Our argument is that they had notice 150 days after Section 116 was first enacted in July of 2020. Because if nothing else, that was ample notice that the district was not going to continue, and at least intended to modify. I mean, the notice... I'm sorry. You're saying they had notice when? Okay. So when Section 116 was enacted, which was in July of 2020, that provided written notice to FOP that the district intended to modify Article 12, and thus Section 2 of Article 12 of the Collective Bargaining Agreement. No, because it only lasted 90 days. And yet still, that would be an intent that we're not necessarily going to proceed with that. I mean, it doesn't have to be an intent saying, absolutely no way will we agree to any of that. All it has to be is, frankly, a letter that says, written notice of intent to modify. But I will also note that worst case scenario, MPD has given written notice in a letter to FOP describing an intent to modify, and that... It is not, because FOP did not raise... I'm erasing your brief. But FOP did not raise this argument that temporary legislation could not provide notice. No, you raised the argument that temporary legislation could. Correct, and FOP... This is on you, and that you're telling me you're not... Do you have authority? Do you have a case or anything that lets me know this? Because this seems a very strange concept of notice to me. No, what I'm telling you is that the district made the argument that Section 116 provided notice. FOP said nothing. You just said it in your brief, but you didn't ever elaborate on how it could, given the 30-day time period. Didn't it occur to you that a 90-day statute doesn't provide 150 days notice? No, it did not, because the statute then was renewed. Okay, you certainly raised a question for me. Well, okay, but FOP didn't raise it, and I certainly would have introduced this. I would have moved to supplement the record with the letter that MPD sent, but FOP did not respond to this argument, did not suggest that temporary scenario. Then we're dealing with needing 150 days notice before the next one year. Just to clarify one more time, when you made this argument about 90-day statutes, and you said, well, there was a series of them, so I guess you're supposed to add them up or something like that. I'm still not sure how it works with this CBA renewal dates. There's no precedent you're aware of in case law or administrative decisions involving collective bargaining agreement interpretations as to that's how that works? No, I mean, this is a very unusual situation, so no. Our argument is that the statute provides notice, but even so, FOP certainly understood the statute to be applying beyond the 90 days, because the FOP understood. I mean, that's why FOP is challenging this law, because it understands that the law is meant to dispose of this right, but I don't want to belabor this point. There are other ambiguities that we already identified in Section 2 itself, in Article 12, and beyond that, I'm happy to move on to substantial impairment, if this court finds that there was some impairment, because I think that you could easily rule on the grounds that the district court ruled on, which was whether there was a substantial impairment to a contractual right, and FOP's argument... Sorry, just to belabor it a little bit, but this hope is a simple question, which is what happens under DC law if there's emergency legislation enacted, 90 days pass, and then there's no subsequent legislative act? I had thought the legislation, the emergency legislation just expires by its terms. That's correct. Okay. Yes. I think there was like a three-day gap, actually, between the first two statutes. But if so, I mean, if the gap matters, well, then the second statute still would have provided 150 days notice. And again, because there are other grounds... Well, there was a gap in there when there was no law affecting the collective bargaining group, so it's pretty complicated. I mean... Is your notice theory, you know, once they enact the first statute, and maybe given the political climate or whatever, the union would think, gosh, there's a reasonable possibility this will be extended many times over? Yes, exactly. The written notice requirement in the collective bargaining agreement doesn't specify how it has to be. It doesn't have to be any magic words. And plainly, FOP was aware of the fact that the DC government no longer intends to include discipline in the next collective bargaining agreement. But again, I'd love to move on to substantial impairment, because I don't think... There's so many different grounds on which this claim can be dismissed. Under substantial impairment, FOP argues that the practical and substantive rights that are impaired by the statute is, and they say this primarily in their amended complaint at appendix 584, that without the collective bargaining on discipline, the district will be allowed to conduct arbitrary retaliatory and illegal discipline. But this is simply untrue as a matter of law, because the Comprehensive Merit Personnel Act amply protects the officers from all of those things. And in Fatute and El Paso, the Supreme Court repeatedly emphasizes that substantial impairment requires impairment of real world interests, not just the right to protect yourself in one certain forum or under one certain process. So I don't think they've an impairment on their individuals. And then FOP argues that the collective bargaining over discipline is what substantially induced it to enter into the contract. But for that claim, you really have to look at which clause it is that was impaired. And FOP has not alleged, and I don't think could reasonably or plausibly allege, that that carryover clause, that little clause that says, if the committee has not resolved this matter, we will include Article 12 in the next bargain agreement, that that induced them to enter. No, no, no. I think that's, I'm not sure that characterizes their argument. I think it is, we, that Comprehensive Personnel Act was already on the books, but we as a union thought it powerfully important to have a seat at the table in establishing discipline procedures. That's why we negotiated Article 12. And Article 12 wasn't just a series of different procedures. It was a right to be at the table and negotiate and have the spokespeople person for the police officers be part of the decision-making process on what procedures are. That's what I think their substantial impairment argument is. And for, I don't, you know, they know, I don't know, you all probably know better than me, but for some reason that was quite important to them. There's an entire article on it and it had this very unusual provision that the district agreed to, that not only will they get a seat at the table, but this is going to carry forward into every other agreement, which I should think is unusual. And that doesn't, that signify the importance of it. Well, you call it a little carry forward thing. That seems like a big deal. Well, no, I have two, well, I have two responses to that. The right to be at the table for disciplinary processes is not a contractual right. That's statutory right. The collective bargaining agreement does not create the right to collectively bargain over discipline. And so this procedure, this joint labor management provision. I'm confused by what you mean. Article 12 sets up a whole procedure for them to be at the table to establish procedures. Yes, no, that's what this committee was. But the committee was created because there was a right to collectively bargain over discipline. It's not like the district granted a concession to collectively bargain over discipline. I apologize. No, I'm sorry. I was interrupting you. The Article 12 goes beyond the protections, well beyond the protections that would apply just by statute. It does in some respects, but in the most critical respect, FOP disputes that that matters. So the district argues that arbitration has led to, or at least that the council could have been aware of studies. We're not asking you to judicially note the truth of these studies, but the existence of them. That the council could have been aware of studies that show that arbitrators reinstate somewhat like half of terminated police officers. But FOP is disputing that. The only argument FOP makes in favor of arbitration, why that matters, is that arbitrators are chosen by both sides, that they have a say in who the arbitrator is. But there's no allegation in the complaint that the sworn judges, the administrative law judges at the Office of Employee Appeals are biased, or that arbitration is the only way to satisfy these substantive rights. Intensely factual dispute is what this sounds like to me that you're talking about now. I don't think it is. I think that, and I will note that to the extent there are some facts at issue, and if this court is concerned about that, the parties have cross-moved for summary judgment. Neither party has filed a 56, I think it's D now, affidavit saying more discovery needs to be conducted. And MPD and the district need a ruling on this as soon as possible because they cannot start applying this. Right now we are voluntarily continuing to apply the procedures of the collective bargaining agreement because there is such a great risk of somebody getting reinstated on a technicality. So I think the parties have put, both parties have put forth everything that needs to be before this court. I see my time is running low and I want to make a few more key points. The first is that if this court wanted to reach the question, if it found that there was unmistakable evidence, that there's no ambiguity in the contract that the district agreed to continue this provision on to the next or even more collective bargaining agreements, this court could then move on to rule on whether the impairment was justified, and we have presented ample argument that it is. I also want to refer this court in the question of whether there was an impairment to now Justice Breyer's decision in amalgamated transit. Even if this court were to take out of the equation the Article 48 argument regarding timely notice, the clause at issue in amalgamated transit is very similar to the carryover clause. Am I remembering, I thought that was a clause which gave either party the right to project the provision forward into future agreements in perpetuity. So it's similar to this one in that it applies to the whole collective bargaining agreement. So it's not like this applying to just one article, but what the clause said in amalgamated transit is that the parties would continue to apply the provisions of the preceding collective bargaining agreement, and if there was a dispute they could negotiate regarding that and proceed to mediation or arbitration, I believe, to resolve that. The way Justice Breyer framed the issue before him was he thought he was talking about provisions of the contract that provide for indefinite or perpetual extension. And here, if I understand the mechanics of this one, this is not like that, because putting aside all of the questions about when the notice kicks in and whether the statute applies in year zero or year one, at some point the district has the ability under this clause to say, no, no, we no longer want to continue article 12. So it's not an in-perpetuity provision, it's at most transitional. So if FOP's interpretation is adopted, then FOP is essentially saying it continues in perpetuity until the parties finish arbitration over any ongoing dispute, and that is similar to amalgamated transit. It's not an exact match, but all that is needed... Right, but they, even on their interpretation, I don't think they have the ability to make article 12 perpetual just by dragging their feet or, you know, refusing to agree to any change, right? Because if you reach loggerheads, there's an arbitration provision, and then the arbitrator can resolve the issue, right? Yeah, and this is how I was connecting it to amalgamated transit, because that was also true under amalgamated transit. If you had a dispute, you could take it to an arbitrator, and that would resolve the dispute. And so I just think that it is similarly... there's similar ambiguity. And amalgamated transit, Justice... Judge Breyer, then Judge Breyer, relied heavily there on the there's an opportunity, if either party could just walk away from the contract altogether after it expired, even that was enough to create ambiguity. So I think that this court, the cleanest way for this court to rule is to say that there's no way that it is unmistakable that in this contract, the district agreed to continue carrying on article 12 in the future, regardless of all of these different possibilities, all these different ways it could be terminable. I mean, I think the fact that it is terminable itself creates ambiguity, even if the district didn't actually succeed in terminating it in a timely manner, and maybe that resolves Judge Millett's concern regarding the temporary legislation. This is a terminable clause. It is not a perpetual binding. There's a question as to which is more binding, and that itself creates ambiguity. If this court is concerned about that, FOP has not satisfied the substantial impairment requirement. It has barely addressed it in its complaint, and the arguments that it has made in favor of substantial impairment really fall away once you look at the protections that are already available under the CMPA. Can I ask just a quick question on the equal protection claim? The Department of Housing Authority, which they contend has sort of the most analogous reach to MPD. Do you know how large Department of Housing Authority police force is? I don't. Is it much smaller or about the same size? We don't know that. Oh, I'm sure it's not the same size. I'm sure it's nowhere near the same size, but I don't know the size of its force. Okay. If we assume, and I know there's debates about this, but if we assume at this stage that they are in many ways very factually similar in the scope of their authority, tell me again, why is it okay to just pick MPD to be the one to start with? Why does, oh, we get to be underinclusive and these types of things. Those usually follow after a reason is given, and so the reason, what is the reason for focusing on MPD and particular, I noticed that, I'm not even sure how it all works, but the resolution, I guess, came along with or preceded the statute, identified four district residents who had been killed, Jeffrey Price, Duquan Young, Marquise Alston, and Terrence Sterling. Whatever the circumstances of those deaths, were those deaths at the hands of MPD or DHA officers? I have not looked into that, and I do not know. I would assume that they're MPD, but it could have been DCHA. I'm not sure about that. I mean, the resolution says MPD has had its instances of police killings. Well, then I would assume that the council knew what they were talking about. Again, that's not something that I looked into or researched, because I don't think it's fair to see this legislation as a response to four specific killings or two specific extra-jurisdictional events. That's not my point. My point is, I asked you, you don't just get to say we get to be underinclusive. You need to have a reason, not much of a reason, under a rational basis review. The reason for treating the two differently, and I wasn't sure, I noticed you hadn't pointed to these MPD deaths. What the council says were deaths of Black individuals at the hands of MPD as one reason for starting there, and so I wasn't sure if you had a different rationale for starting with MPD. I listed a few in my brief for not including the housing authority, and I think the most it has a different agency. That doesn't seem like a very powerful argument for the district. Well, when you're talking about a question, I'm sorry, I'm not sure if that's a flattering interpretation for the district, but it is definitely a big difference. They're an independent agency, and we're talking about... Independent, as in they're not controlled by the council? They're not controlled by the mayor. They're not controlled by the council. I mean, the council is the one that's legislating here. But the council is not the one that negotiates the collective bargaining agreements. The council is the one that is enacting the laws, but the collective bargaining agreements for MPD are negotiated by the mayor's office, and there's a specific agency that does that, and so it's an entirely different agency, and that alone is enough to make it not similarly situated, and the Supreme Court has said that equal protection does not require a choice between attacking every aspect of a problem or not attacking it at all, and this is a police reform statute that was focusing on MPD in particular when it came to this type of... To the accountability, and if the court will bear with me, I think it's important to note that the statute has a lot of provisions that deal with things other than use of force and that are not applicable to the housing authority, which handles its own training and discipline, and it's... That's what I was thinking. Can you answer the question that I was confused about when I asked Mr. Conte about, do the other provisions in here, at least neck restraints, maybe we'll just start with neck restraints, does that... Do those apply to other law enforcement agencies, the district like the DHA? It says law enforcement and special police officer use of neck restraints is excessive. I believe so. I mean, that's, again, a lot of these questions that are proper questions that you're asking here didn't come up in briefing, and so I haven't had a chance to confirm, but yes, neck restraints would definitely apply, but changes to the... Body-worn camera. I actually don't know whether the housing authority uses body-worn cameras. I don't know whether that applies, but the changes to the police complaints board, I think, is specific to MPD, and that includes police officers fail to report violations of rules and regulations, not just use of force regulations, but all of those. It limits consent searches, and it expands... MPD or for all district... You don't know that answer. I don't. That's all right. I was just... I was confused by the language in the statute, and by that map dot language in section 116, but I guess that's just the way it is. And the place where I know the housing authority probably wouldn't fall under the comprehensive legislation would be the specific requirements for hiring police officers or for expanding continuing education for officers or, for example, requiring visible officer identification during demonstrations. I don't know that housing authority officials are ever around, or I don't know if they are involved in demonstrations. The most important thing, though, with regard to equal protection is that no one disputes that improving police accountability, and FOP has not argued that police accountability is perfect. Nobody disputes that improving it is a legitimate and important government interest. And what the council reasonably thought is that allowing management or the council to control the disciplinary process, rather than having FOP have a seat at the table and getting to dig in their heels and bring it to impasse any time they don't like a change, that that would improve accountability. And FOP concedes, and they say this in their amended complaint at appendix 591, that holding one accountable is accomplished through punishment. So there is a close, rational nexus here. Collective bargaining encumbers reform. Just the existence of the collective bargaining agreement itself at the time controlled all of the disciplinary actions. But even if the CBA was not in effect, like if there was no collective bargaining agreement in effect at the time, just the duty to bargain over disciplinary procedures hinders reform. And the council created, and it's one of the last provisions in this act, the Police Reform Commission, and charged it with studying police discipline and providing evidence-based recommendations for change. If collective bargaining still existed regarding discipline, then those evidence-based recommendations may never be brought to fruition. And that is the reason for the law. It is important, it is compelling, and it is certainly rational. Anything further? No. Thank you. Thank you. All right. We'll hear from council for petition, appellate, sorry. Thank you, Your Honor. One point I want to bring up, and it's on this notice issue. The collective bargaining agreement, as council just acknowledged, is not something that the council enters into. It's entered into between the Metropolitan Police Department and agency. And so when it says the parties can provide notice of their intent to terminate a that's not accomplished by the council, who's not a party, as council just conceded, passing emergency legislation. And that's not the practice between the parties. The parties provide notice to one another. I thought council referred to a letter. I'm not aware of the letter. I think council also said that's not in the record, so I don't know. It wasn't raised in your brief, so there was no reason to put it in. But she said, had it been, then she would have moved to supplement the record with the letter. So why don't you focus on matters that are most important to your argument in responding to the court's questions and what was argued by appellate's counsel? Sure. On the issue of substantial impairment of real interest, article 12, which is before the court, has a host of real world interests that are impacted by this legislation. And it's not just disciplinary in nature, but it ties into the disciplinary provisions. The right to carry a weapon couldn't be a more important provision. And that right to carry a weapon while under disciplinary investigation is part of what is provided for in article 12. It also has provisions that relate to the promotion of police officers while under disciplinary investigation. And it has, in addition, provisions directly impacting suspensions without pay. So to say that article 12 has no substantial real world interest, I think ignores how broad this provision that's been rescinded by the counsel's act is. With respect to the amount... Is it the case that right now on the ground, DC is proceeding under the pre-act system, correct? Pre-act disciplinary system. That's correct. And so when counsel raises the argument that that's out of concern for what the court will do, that's not my understanding. I mean, there's a carryover provision. And so if a new collective bargain agreement is not negotiated, the carryover provision means it remains in effect. But if you assume that the carryover provision is transitional in the sense I was discussing with your friend on the other side, rather than giving either side the right to continue article 12 in perpetuity, it's a transitional provision. And however long we are from the enactment of the statute, it doesn't seem like a huge deal. Whatever disciplinary proceedings have been going on, have been going on under the old statute, you would have known from the beginning that article 12 carries forward, but only for a limited amount of time. And that's effectively what's happened here. Well, I mean, it is a huge deal in that what we bargained for was not a perpetual agreement. And you could look at it as transitional. And I would agree with your honor that carryover is transitional. But we have a right to exercise our option one time. That's not perpetual. But what that right is, is that when the parties are dissatisfied, they will bargain and renegotiate article 12. That right was terminated. It just was. Now, it's not a perpetual right. It's not the same as amalgamated. It's a one-time exercise of a right that, by definition, will be incorporated into the next collective bargaining agreement. And the council terminated that. But when you're negotiating future collective bargaining agreements, you do so against the backdrop of existing law, which now includes the statute. It presuming that that the law is constitutional, clearly, clearly constitutional as applied to future collective bargaining agreements. I mean, the only contract clause issue that's I'll just speak for myself, that's giving me a little bit of pause is just this wrinkle with me. You think it's more than that. But this article 12 carryover issue, if you're focusing on future collective bargaining agreements entered into after the date of enactment of the statute, there's no impairment problem with those. Well, I would argue that if you've created a contract that makes a promise not in perpetuity, but in the future for the next collective bargaining agreement, it has. I mean, that's the very nature. The council can say that we're just terminating it as to the next collective bargaining agreement, which is exactly what they said. They identified any collective bargaining agreement entered into after this date. But if we have a right to have a provision in that agreement, that has impaired that right. I mean, you have a right to have that provision continue only while only to the extent that negotiations about the successor agreement are ongoing. Correct. Shall be incorporated into the successor agreement until such time as the parties agree on revisions to Article 12. But that's existing Article 12. So we have the right for the existing Article 12 to continue into the next negotiated agreement. That's separate and apart from the right to then reopen negotiations on Article 12 and through this committee process. So we have two rights here. One is for Article 12 to carry forward to the hold the committee meetings. And then depending on when that falls, that could be this collective bargaining agreement, the next, the following. But then once that's triggered, that's a separate and independent right to have a committee process bargain for negotiate another Article 12 incorporated into the next collective bargaining agreement. All right. I'm sorry, just one quick question. So the current law expires on April 16th of this year. They've all been temporary. Do you know if there's a new law that's extending that beyond April 16th? I'm not aware, Your Honor. All right. Anything further, counsel? Nothing further. Thank you. Thank you. We'll take the case under advisement.
judges: Rogers, Millett, Katsas